No. 24,238.

THE UNION TRACTION COMPANY, *Appellant,* v. (THE STANDARD BRICK COMPANY et al.), THE KANSAS CASUALTY & SURETY COMPANY, *Appellee.*

No. 24,239.

THE UNION TRACTION COMPANY, *Appellant,* v. (THE COFFEYVILLE VITRIFIED BRICK & TILE COMPANY et al.), THE KANSAS CASUALTY & SURETY COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

MECHANICS' LIENS — *Traction Company — Transporting Brick — Claims for Freight Charges Not Lienable Claims.* The freight charges of a traction company for transporting certain carloads of brick from the city of their manufacture to the city where the bricks were to be used for the paving of public streets are not lienable claims as for labor or labor performed within the meaning of the mechanics' lien act (Gen. Stat. 1915, § 7557, *et seq.*), nor do such freight charges fall within the terms of the bond which was given by the paving contractor to secure the payment of all claims for labor which might be the basis of liens and to hold the city free and harmless of and from all such claims.

Appeals from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed February 10, 1923. Affirmed.

*John J. Jones,* of Chanute, and *Chester Stevens,* of Independence, for the appellant.

*F. B. Stanley, Vincent F. Hiebsch,* and *J. B. Patterson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: These actions were brought by a traction company to recover the freight charges for certain shipments of brick from Coffeyville to Independence for use in street paving in Independence. The bricks were shipped by certain brick companies impleaded

herein and consigned to a firm of contractors, Green & Cullen, who had the contract to pave the streets.   The Kansas Casualty & Surety Company, principal defendant, is the surety which furnished the contractor's statutory bond guaranteeing that all claims for labor and materials used in the construction of the street improvement would be paid.   The contractors became bankrupt; the plaintiff's freight charges for the shipments of brick were not paid; and the question is whether the surety company is liable therefor under the terms of its bond.   The trial court held otherwise, and the plaintiff appeals.

The statutory provisions (Gen. Stat. 1915 § 7557, *et seq.*), give all persons who perform labor or furnish materials for the improvement of real property, etc., a lien for the amount due them therefor and prescribe the mode of perfecting such lien and for its enforcement, and provide for the giving of a bond in lieu of such lien. (Gen. Stat. 1915, § 7568, *et seq.*).   And while a street improvement is not subject to a lien, it is regarded as quasi-lienable for the purpose of protecting lawful claims for labor or materials through an action on the contractor's bond.   (*Griffith v. Stucker,* 91 Kan. 47, 136 Pac. 937; *Crane Co. v. Terminal Railway Co.,* 98 Kan. 336, 339, 158 Pac. 59.)

It is suggested that the surety company's liability can be gleaned from the general language of the bond guaranteeing faithful performance of the contractor's agreement with the city in all its parts. But it is difficult to discern anything approaching a breach of the contractor's agreement with the city of which the traction company may take advantage.   In *Shannon v. Abrams,* 98 Kan. 26, 157 Pac. 447, the surety company bound itself not only to pay claims which might be the basis of statutory liens but "all other obligations and liabilities necessarily incurred" in constructing the improvement. No such all-inclusive obligation is found in the present contract, nor can its terms be fairly so extended.   The pertinent recital in the bond provides that if the contractors "shall well and truly pay all claims for labor or material, or both labor and material, which might be the basis of liens   .   .   .   and shall hold said city free and harmless of and from all such claims, then this bond is to and shall become null and void; otherwise to be and remain in full force, effect and virtue."

There is no contention that the city of Independence is liable for the payment of the freight charges.

The appellant's main argument is that the transportation of the carloads of brick was labor, and in a certain sense that is true; but it can hardly be said that transportation by rail carriage and electric motive power was the sort of labor the legislature had in contemplation in the enactment of the statute. The gist of the decided cases is that the labor protected by the statute is manual labor for which a daily wage is to be paid, or similar compensation for a *quantum* of physical toil. (See notes in 18 L. R. A. 305; 30 L. R. A., n. s., 85; 27 Cyc. 82; 18 R. C. L. 912.)

Appellant cites some cases from other jurisdictions holding that teamsters who haul materials to the place where the improvement is to be made are entitled to a lien. ("Mechanics' Liens," Cent. Dig., § 47; Dec. Dig., § 50; 27 Cyc. 44.) These decisions are not uniform, and doubtless depend on the particular language of the different statutes construed. But it seems that the question under consideration is virtually foreclosed by our own decision in *Mann v. Burt*, 35 Kan. 10, 10 Pac. 95, construing the mechanic's lien act of 1872 (ch. 136), which required railroads to exact a bond from contractors engaged in railway construction work "conditioned that such person shall pay all laborers, mechanics and material men, and persons who supply such contractor with provisions or goods of any kind, all just debts due to such persons, or to any person to whom any part of such work is given, incurred in carrying on such work." (Gen. Stat. 1915, § 8453.) This court held that while a teamster was himself a laborer and protected by the act to the extent of his own labor, yet he had no lien for the work of his team, and unless the contract was severable, permitting his compensation for his own labor to be computed apart from that of the team, the teamster's claim for the work of himself and team did not come within the statute. While that decision was under the mechanic's lien statute relating to railroad construction work, yet its terms, although less verbose, are as comprehensive as those of the general mechanic's lien act which was originally enacted by the same legislature (Laws 1872, ch. 141), and it may be inferred that the recent broadening of the latter act, by the amendments to sections 7557 and 7559 by chapter 235 of the Laws of 1919, was prompted by the decision in *Mann v. Burt*, supra. At the time the plaintiff's freight charges were incurred, in 1916, the act read:

"§ 7557. Any person who shall under contract with the owner . . . perform labor . . . for the erection, alteration . . . of any building, im-

provement . . . shall have a lien . . . for the amount due to him for such labor. . . .

"§ 7559. Any person who shall . . . perform such labor under a subcontract . . . or as an artisan or day laborer . . . may obtain a lien . . . for the amount due him for such . . . labor. . . ."

The corresponding parts of the act, as amended in 1919, read:

"SECTION 1. Any person who shall under a contract with the owner . . . either by himself or with horse, or team of horses and driver, or auto truck or auto truck and driver . . . perform labor by himself or with horse, or team of horses and driver, or auto truck or auto truck and driver . . . shall have a lien . . . for the amount due to him for such labor of himself horse, team, horses and driver, or auto truck or auto truck and driver. . . .

"SEC. 2. Any person who shall . . . perform such labor by himself, with horse or team, or horses and driver, or auto truck or auto truck and driver, under a subcontract . . . or as an artisan or day laborer . . . may obtain a lien . . . for the amount due him for . . . labor, and any artisan or day laborer when working by himself, or with horse, team or horses and driver, or auto truck or auto truck and driver . . . may obtain a lien . . . for the amount due him for such . . . labor by himself or with horse, team or horses and driver, or auto truck or auto truck and driver. . . ."

In *Bank v. Insurance Co.*, 109 Kan. 562, 200 Pac. 281, and in *School District v. Cloepfil*, ante, p. 188, 210 Pac. 192, this court declined to extend the provisions of the mechanic's lien act to cover moneys loaned to pay for labor and material used in constructing a building. The present case, while not strictly analogous, is bound by the same limitations.

All through the mechanic's lien act, both in its original and amended form, the concern of the legislature seems to have been for the artisan and the day laborer, and while the legislative purpose is remedial and entitled to liberal interpretation, yet its terms cannot be extended by judicial construction to hold that the plaintiff's freight charges for the transportation of the carloads of brick from Coffeyville to Independence can be classed as labor so as to subject the defendant surety company to liability therefor under the terms of its bond.

Affirmed.