The **GOODYEAR TIRE & RUBBER COMPANY**, a corporation, Plaintiff,

v.

**Mrs. E. A. JONES**, also known as **Fern L. Jones** d/b/a **Jones Electric Machinery Company**, et al., Defendants.

Civ. A. No. T–4360.

United States District Court, D. Kansas.

March 1, 1968.

On Motions for Summary Judgment
April 18, 1968.

1286

Peter F. Caldwell, Topeka, Kan., for Goodyear Tire & Rubber Co.

Frank Sabatini, Topeka, Kan., for Mrs. E. A. Jones.

Donald Patterson, Topeka, Kan., for Universal Surety Co.

Elmer Hoge, Asst. U. S. Atty., Topeka, Kan., for the United States.

O. F. Baldwin, Topeka, Kan., for State of Kansas.

Ralph Glenn, Topeka, Kan., for Topeka State Bank.

B. L. Pringle, Topeka, Kan., for Bruce Walters and Duane Post.

## MEMORANDUM OF DECISION

TEMPLAR, District Judge.

On November 21, 1967, the plaintiff filed with this Court an interpleader action pursuant to 28 U.S.C. §§ 1335 and 2361. Plaintiff alleged that it was obligated in the sum of $52,661.04 to the defendant, Mrs. E. A. Jones (Fern Jones), d/b/a Jones Electric Machinery

Company, for electrical work and materials furnished under the terms of a construction contract. The construction contract provides, in part, as follows:

" * * * however, that neither said contract price nor any part thereof nor any amount agreed upon as additional thereto shall be due and payable until the Contractor shall have executed and/or delivered to Goodyear any and all affidavits, statements, certificates, releases, receipts or waivers required by the state mechanics' lien laws, or which Goodyear may reasonably require as evidence of the fact that no right to a lien exists in favor of the Contractor, subcontractors, laborers and/or materialmen, Goodyear is expressly authorized by the Contractor to retain out of any money then due or to become due to the Contractor an amount sufficient to discharge such claims and to disburse said amount to the claimants unless prior to such disbursement the Contractor shall have furnished Goodyear satisfactory receipts or waivers from each claimant showing that payment has been received or the right to a lien waived by each."

The plaintiff further alleges that on September 25, 1967, subsequent to the completion of the contract, plaintiff requested defendant to furnish it with an affidavit as required by the contract but that defendant Jones failed and refused to comply with the request. The plaintiff then filed this action to protect itself from the various claims being asserted against it by debtors of defendant Jones. Fifty-three thousand, fifty-four and 88/100 dollars, the sum owing defendant Jones by plaintiff, has been deposited with the registry of this Court.

The record discloses that on March 10, 1967, the defendant, Universal Surety Company, executed and delivered a labor and material payment bond, in which the defendant Jones was principal and plaintiff was obligee.

On January 5, 1968, the defendants, Duane Post and Bruce Walters, filed an answer and cross-complaint wherein they allege that on September 13, 1966, the defendant, Mrs. E. A. Jones (Fern Jones), d/b/a Jones Electric Machinery Company, through its agent, Ralph Jones, employed the defendants Post and Walters as the two first foremen on the project at regular union wages; that on September 21, 1966, an additional wage agreement was executed whereby defendant Jones agreed to pay defendants Post and Walters the sum of $5,500.00 each, provided they continued as foremen until the job's completion. The cross-claimants also contend that when the job was completed, the defendant Jones failed and refused to pay the sum contained in the additional wage agreement and as a result, defendants Post and Walters filed a mechanic's lien as is permitted by the laws of the State of Kansas, and that by virtue of said lien their claim is now superior to the claims of any other defendant in this action. In Count II of the cross-complaint, the defendants allege that after October 8, 1967, subsequent to the completion of the Goodyear contract, additional work was performed for defendant Jones and payment has not been made for that employment, leaving a sum due and owing of $715.00 to Post, and $699.00 to Walters.

On January 22, 1968, the cross-claimants filed a motion for summary judgment. The primary issues as to Count I of the cross-complaint is whether the $5,500.00 to be paid to each Post and Walters was compensation to be paid for "labor" as set forth in the Kansas Mechanics' Lien Statute, K.S.A. § 60–1101, and whether Ralph Jones was the authorized agent of defendant Jones, with authority to enter into the wage agreement. The cross-claimants contend they are entitled to judgment as a matter of law and that the sums should be "paid forthwith either out of the funds held by the Clerk of the District Court or by the Universal Surety Company * * *." On Count II, the cross-

claimants contend they are entitled to the wages alleged to have been earned subsequent to the completion of the contract, and that the money should be paid out of the funds on deposit with this Court, and shared " * * , pro rata with the other creditors with the balance remaining as a judgment against the defendant, Mrs. E. A. Jones."

The cross-claimants, Duane Post and Bruce Walters, in the first count of their cross-complaint base their contention on a written agreement entered into between them and Ralph Jones, who is and was at the time, the authorized managing agent of the contractor Jones Electric Company. The question of agency presents no difficulty. Ralph Jones was held out by the contractor to be her authorized managing agent. The contractor admits the agency and ratifies the agreement.

There is nothing illegal about the agreement nor does anyone in this proceeding contend that it was.

The agreement, though not in technical legal terms, seems clear and free from ambiguity. It simply recites that Walters and Post, the first two foremen on the job, are having difficulty with their union and are under enormous pressure to desert Jones. This agreement bears the date of September 20, 1966, the same date on which Goodyear, the owner, had by telegram accepted the bid of Jones Electric and had directed that the work proceed immediately. Jones declares in the agreement that the presence of Walters and Post is essential for the job's completion and their continued loyalty to Jones will seriously jeopardize their future employment opportunities. Jones then promises and contracts to pay *upon this job's completion* an additional wage in the amount of $5500 each to Post and Walters, *"provided that they have continued in my employ to the end of the project."*

Post and Walters urge that the parties to the contract have by its terms made the amount of $5500 to each of them an *additional* wage and that such *additional wages* are lienable items under the Kansas Mechanics' Lien Statute which provides that any person furnishing labor used or consumed at the site of the property subject to a lien under agreement with the contractor may obtain a lien, etc. K.S.A. § 60–1103.

K.S.A. § 60–1101 declares that any person furnishing labor used or consumed for improvement of real property shall have a lien upon the property for the labor and the lien shall be preferred to all other liens, etc.

The question before the Court is more difficult than might appear at first glance. The agreement declares that the added compensation is an "additional wage." The Court must conclude that the parties to the agreement intended the payment to be wages.

■ Wages are agreed compensation for services by workmen, clerks and servants, those who serve an employer in a subordinate or menial duty and who are supposed to be dependent upon their earnings for their present support, whether they are paid by the hour, the day, the week, the month, the job, or the piece. 2 Bouv.Law Dict., Rawle's Third Revision, p. 3417.

Thus, the compensation provided for in the agreement signed by Ralph Jones was, as the parties contend, a promise to pay wages.

■ But the statute providing for a mechanic's lien is purely a creation of legislative enactment and those claiming such a lien must bring themselves clearly within the provisions of the statute authorizing it. Potter v. Conley, 83 Kan. 676, 112 P. 608.

The rules of construction to be applied under Kansas law are set forth in Bridgeport Machine Co. v. McKnab, 136 Kan. 781, 786, 18 P.2d 186, 188, where it was said by the Kansas court:

"In this state the strict construction of all lien statutes has been the general rule as applied to the matter of determining to whom and for what a lien statute gives a lien. After interpreting it to entitle a party

to a lien for a particular article or thing, then a liberal interpretation has generally been given as to its enforcement, as is shown by the following quotations:

"'As mechanics' liens are purely statutory, their operation and extent must be found within the terms of the statute creating and defining them. As the statutes confer special privileges upon one class of persons over others, it must clearly appear that those claiming the benefits of the statute are within its provisions. The law is entitled to a liberal interpretation in its application to all persons or classes who are within the protection of the statute, but this rule cannot be invoked to confer the special privileges and preferences of the law upon those not definitely included by the statute.' (Nixon v. Cydon Lodge, 56 Kan. 298, 304, 43 P. 236.)

"'We have held that it must be clearly shown that the claim comes within the statute. The court cannot under the guise of interpretation extend the statute to cases not within its provisions, but when a case is found to be within the statute and the question is whether the claimant has taken the proper steps to enforce the lien, a liberal rule of interpretation should be applied.' (Bassett, Trustee, v. Carpenter, 114 Kan. 828, 833, 220 P. 1028.)"

 While the provision of the law relating to liens for labor and material are to be construed liberally and in the interests of justice, yet such liberal construction does not permit the terms of the statute itself to be disregarded. As the Kansas Court declared in Ekstrom United Supply Co., a Corp., v. Ash Grove Lime & Portland Cement Co., 194 Kan. 634, 635, 400 P.2d 707, 709:

"It is a settled rule in this state that equitable considerations do not ordinarily give rise to a mechanic's lien. Being created by statute, a mechanic's lien can only arise under the circumstances and in the manner prescribed by the statute. A lien claimant must secure a lien under the statute or not at all. (Don Conroy Contractor, Inc. v. Jensen, 192 Kan. 300, 304, 387 P.2d 187.) The validity of a lien created solely by statute depends upon the terms of the statute, and parties may not by estoppel enact or enlarge a statute. (Clark Lumber Co. v. Passig, 184 Kan. 667, 673, 339 P.2d 280.) There is no privity of contract between the subcontractor and the owner, and the former can only obtain a lien by compliance with the statutory provisions."

 With these declarations in mind, we consider the basis of the cross-claims before us:

1. The promise to pay additional wages to the cross-claimants was a secret agreement between a contractor and two laborers.

2. The claimants received their regular wages for their work as the performance of the contract progressed under the requirements of the union wage scale.

3. The promise to pay the additional wages provided for in the agreement was conditional upon the claimants continuing in the contractor's employ until the end of the project.

4. The consideration for the promise to pay additional wages was not clearly intended to be for labor used or consumed for the improvement of real property but by its terms was intended to be an inducement promised by the contractor to the cross-claimants for the purpose of obtaining their loyalty in the face of serious threats to their union standing and impairment of prospects for future employment.

We look to the interpretation given the Kansas lien law by the Kansas court.

In Union Traction Co. v. Kansas Casualty & Surety Co., 112 Kan. 774, 213 P. 169, where the lien claimant

sought to establish a lien for transportation charges on material supplied to a construction project, claiming it to be labor, under provisions of the lien law, the court held:

"In [Neodesha Nat.] Bank v. [Chicago Bonding &] Insurance Co., 109 Kan. 562, 200 P. 281, and in [Union] School District [No. 3, Lincoln County] v. Cloepfil, ante, 112 Kan. p. 188, 210 P. 192, this court declined to extend the provisions of the mechanic's lien act to cover moneys loaned to pay for labor and material used in constructing a building. The present case, while not strictly analogous, is bound by the same limitations.

"All through the Mechanic's Lien Act, both in its original and amended form, the concern of the Legislature seems to have been for the artisan and the day laborer, and while the legislative purpose is remedial and entitled to liberal interpretation, yet its terms cannot be extended by judicial construction to hold that the plaintiff's freight charges for transportation of the carloads of brick from Coffeyville to Independence can be classed as labor so as to subject the defendant surety company to liability therefor under the terms of its bond."

The Court has had occasion to consider the lien statute as it is interpreted by the Kansas courts, and in Standard Oil Co. v. Federal Surety Co., 8 Cir., 28 F.2d 489, the court of appeals sustained this Court's ruling, citing with approval the quotation from Union Traction Co. v. Kansas Casualty & Surety Co., supra, which held that:

"The gist of the decided cases is that the labor protected by the statute is manual labor for which a daily wage is to be paid, or similar compensation for a quantum of physical toil."

Finally, the Kansas Court in Adair v. Transcontinental Oil Co., et al., 184 Kan. 454, 464, 338 P.2d 79, approved the following statement of Justice Brandeis found in Piedmont & George's Creek Coal Co. v. Seaboard Fisheries, 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97:

"' * * * The principle upon which the mechanic's lien rests is, in a sense, that of unjust enrichment. Ordinarily, it is the equity arising from assumed enhancement in value resulting from work or materials expended upon the property without payment therefor which is laid hold of to protect workmen and others who, it is assumed, are especially deserving, would ordinarily fail to provide by agreement for their own protection and would often be unable to do so.' "

This Court must hold that cross-claimants have not clearly established their lien claims under the September 20, 1966 contract within the provisions and purposes of the lien law as construed and interpreted by the Kansas courts. There is no unjust enrichment to the owner in this case, and the additional compensation which the contractor agreed to pay is not a lienable item within the contemplation of the lien law.

The fact that the workmen and the contractor agreed that the payment was to be made for "wages" does not necessarily determine that such wages were made for labor "used or consumed for the improvement of real property," as the Kansas Lien Statute requires. (K.S.A. § 60–1101.)

The cross-claimants' motion for summary judgment on Count I of their cross-claim must be overruled.

Cross-claimants have also asked for summary judgment on Count II of their cross-complaint in accordance with the prayer stated therein. They wish the Court to direct that they be awarded judgment for wages due on work performed for Jones Electric after completion of the Goodyear contract *and* that such amounts be declared a lien upon funds deposited with the Clerk by Goodyear. The facts before the Court at this

stage of the proceedings do not permit the Court to grant so extensive a judgment, and crossclaimants' motion for summary judgment on Count II must be denied.

It is ordered and adjudged that the motion of Duane Post and Bruce Walters on Counts I and II of their cross-complaint be and the same is over-ruled and denied.

## ON MOTIONS FOR SUM-
## MARY JUDGMENT

On March 1, 1968, the Court filed its Memorandum of Decision denying the motion of cross-claimants Post and Walters for summary judgment against Goodyear Tire, Universal Surety, and Mrs. E. A. Jones, d/b/a Jones Electric, on the two counts contained in the answer and cross-complaint filed by Post and Walters. (Doc. 29).

The plaintiff, Goodyear Tire, and defendant, Universal Surety, have now filed and presented their joint motion for summary judgment against cross-claimants Post and Walters. (Doc. 82). The cross-claimants have filed and presented their joint motions to set aside certain rulings previously made by the Court and for summary judgment against Universal Surety, Goodyear Tire, Jones Electric, and all other defendants. (Doc. 87).

Most of the facts which should be considered in connection with their motions are set forth in the Memorandum filed by the Court on March 1, 1968, and will not be repeated. (Doc. 75).

Very briefly, it may be said that Jones Electric submitted a bid to perform a contract involving electrical work and supplying materials on the Goodyear Plant located near Topeka, Kansas. The bid was accepted by Goodyear, the work was finally completed, but because of a substantial tax lien filed by the United States against Jones Electric, Goodyear filed an interpleader action, seeking to bring before the Court all rival claim-

ants to the balance remaining unpaid under the construction contract in the amount of $53,054.88, which amount was paid into the registry of the Court by Goodyear so that the claims and priorities of the parties could be established and determined by the Court and the fund distributed to the parties entitled to it.

The cross-claimants, Post and Walters, set up a cross claim against Goodyear, Universal, and Jones Electric, contending that under a written contract which they had with Jones Electric, each of them was entitled to establish a mechanic's lien under the applicable Kansas statute for the sum of $5,500.00 each, in addition to their regular wages, which they were to be paid as wages by Jones Electric upon the completion of the Jones Electric contract with Goodyear. The cross-claimants presented a motion for summary judgment on this joint cross claim, and the Court, by its ruling of March 1, 1968, denied their motion.

The cross-claimants, Post and Walters, have requested the Court to set aside or modify certain findings made in the Court's decision of March 1, 1968.

They correctly point out that the finding in the Court's Memorandum (p. 1288) which states that, "This agreement [the agreement between Post and Walters and Jones for additional wages] bears the date of September 20, 1966, the same date on which Goodyear, the owner, had by telegram accepted the bid of Jones Electric and had directed that the work proceed immediately," is incorrect in that the telegraphic acceptance of the bid by Goodyear was in fact made on September 13, 1966. The finding is corrected accordingly.

Cross-claimants also object to the Court's finding on page 1289 of the Memorandum, in which the Court found, "The promise to pay additional wages to the cross-claimants was a secret agreement between a contractor and two laborers." The Court agrees that the finding has implications not intended,

and substitutes the following language in modification thereof:

"The promise of Jones Electric to pay additional wages to the cross-claimants was an agreement not disclosed to the owner, Goodyear Tire or to Universal Surety."

The portions of the motion of cross-claimants to set aside the findings of the Court set forth in No. 3, No. 4 and No. 5 of the motion have been considered by the Court. The Court, after reviewing the record of the case, the affidavits and exhibits submitted, and the depositions now on file, is satisfied with those findings to which the cross-claimants have taken exception and now reaffirms the same.

When the bid of Jones Electric was accepted by Goodyear, as a part of the requirements of the contract, Jones Electric posted a performance bond and a "Labor and Material Payment Bond," a copy of which is attached to the deposition of Ralph Jones, the manager of Jones Electric. This bond provided that the contract between Jones Electric and Goodyear dated October 10, 1966, for the work to be performed, was made a part of the bond contract by reference. The bond was conditioned to pay all claimants "for all labor or material used or reasonably required for use in the performance of the contract." A claimant is defined in the bond as "one having a direct contract with the principal or with the subcontractor of the principal for labor, material, or both, used or reasonably required for use in the performance of the contract. * * *"

The cross-claimants and defendant, Jones Electric, urge that this language of the bond is more liberal than the language of the mechanic's lien law and is intended to cover labor used *or reasonably required* for use in the performance of the contract. Cross-claimants and Jones Electric insist that they intended the $5,500.00 payments to be additional wages and that the services rendered and performed by Post and Walters were not only reasonable but were reasonably required in order that Jones Electric could perform the contract.

The Court holds the view that these $5,500.00 payments due to Post and Walters under their agreement with Jones Electric are not lienable items under the Kansas Mechanic's Lien Law. The question here is, "Do the provisions in the Universal Bond Contract cover the claims of Post and Walters which are not lienable items under the statute?"

First, we should reflect upon the obligations of the parties to the bond and the conditions under which the surety should become obligated to third parties claiming rights under its provisions.

The contract between Jones Electric and Goodyear provided for certain work to be performed by Jones for Goodyear. That contract was made a part of the bond. The contract provided for the payment by Goodyear to Jones Electric of the sum of $144,073.45, when the contract had been completed by Jones Electric with the usual provisions for partial payments to be made as the work progressed. The construction contract required the posting of a "Labor and Material Payment Bond" which was conditioned upon the payment by Jones Electric of all labor or materials used in performance of the construction contract. The obligee on the bond is Goodyear. It is made for the use and benefit of those persons defined as "claimants" in the bond. Post and Walters insist they are claimants within the bond's provisions, as does Jones Electric. Under the statute, K.S.A. 60–1103(b), Goodyear is not liable for a greater amount than it contracted to pay. It has paid into Court the undisbursed balance due on the contract and by doing so discharged its obligations.

Though the bond is not one provided for by K.S.A. 60–1110, there is nothing in the law prohibiting a different or additional one than that prescribed by statute. Capital Iron Works Co. v. Maryland Casualty Co., 99 Kan. 45, 160 P. 1006.

The construction contract was made a part of the bond by reference. Its terms and conditions are a part thereof. The surety had a right to look to the terms and provisions of this contract because it was to guarantee the payment of all labor and material used or reasonably required for use in performance of the contract. The contract specifically provided for the bond in question and Goodyear agreed to reimburse Jones Electric for the cost of the bond.

■■■ The contract between Goodyear and Jones Electric was formalized October 10, 1966. By its provisions, the specifications and drawings prepared for the work on August 12, 1966, were made a part of the contract. The bid of Jones on the proposal which included the specifications was made September 2, 1966. It was this bid which Goodyear accepted and which formed the basis of the contract formalized on October 10, 1966. The bid of Jones Electric proposed to perform the contract for $144,073.45. Of this amount, material charges were listed at $52,942.55 and labor charges at $91,130.90. The bid contained some 23 pages of breakdown of costs of labor and material of each unit provided for in the specifications.

It was this formalized contract, based on the bid submitted by Jones Electric pursuant to the plans and specifications prepared for Goodyear, which Universal Surety had to consider when the bond contract in question was signed by it as surety. Nowhere was any disclosure made to Goodyear or to Universal that Jones Electric had made a contract with Post and Walters, promising to pay them an additional amount of $5,500.00 each if and when the Goodyear contract was completed and if Post and Walters continued in the employ of Jones until the end of the project. Certainly the construction contract made no provision for such payment.

Whether the conduct of Jones Electric, participated in by Post and Walters, was such as to relieve Universal from its obligation on the bond, the Court cannot decide this issue from the record as it stands. But the Court believes, as it determined in its original decision, that the conditional promise of Jones Electric to pay Post and Walters upon the job's completion an additional wage if they continued in the employ of Jones to the end of the project was not for "labor" within the meaning of the Mechanic's Lien Statute of Kansas, nor was the promised additional wages to be paid for "labor" within the contemplation of any of the parties as that term is used in the "Labor and Material Payment Bond" signed by Universal as surety.

> "All mechanic's lien statutes confer a lien for work, labor, or services. However, in order that a lien may be acquired for work, labor, or services, they must be of such a nature as to come within the meaning of the statutory or constitutional provision under which the lien is claimed." 57 C.J.S. Mechanics' Liens § 34, p 528.

Supporting this statement is cited the Kansas case of Road Supply and Metal Co. v. Bechtelheimer, 119 Kan. 560, 563, 240 P. 846, 847, which states:

> "The term 'labor' as used in the mechanic's lien statute refers to physical labor ([Union] Traction Co. v. [Coffeyville Vitrified] Brick & [Tile] Co., 112 Kan. 774, 776, 213 P. 169), or the specific kind of labor mentioned in the statute."

The Court believes that when all the circumstances disclosed by the record are taken into consideration, it must conclude that the conditional payment promised by Jones Electric to Post and Walters was not for "labor" within the meaning of the Kansas Mechanic's Lien Statute, nor was it for "labor" as contemplated or intended by the parties to the Labor and Material Payment Bond executed by Universal as surety for Jones Electric.

The Court must, therefore, reaffirm its ruling denying the motion of cross-claimants Post and Walters for summary

judgment on Count I of their cross-complaint against Universal Surety Company, The Goodyear Tire and Rubber Company, and Mrs. E. A. Jones, a/k/a Fern L. Jones, d/b/a Jones Electric Machinery Company, and on Count II against Mrs. E. A. Jones, a/k/a Fern L. Jones, d/b/a Jones Electric Machinery Company.

The Court also finds and determines that the cross-motion for summary judgment filed and presented by Universal Surety Company and The Goodyear Tire and Rubber Company against defendants and cross-claimants, Duane Post and Bruce Walters, on the issues presented in Count I of their cross-complaint should be sustained and the relief therein prayed for by Post and Walters should be, and is hereby, denied for the reason that there is no material issue to be tried as between these parties, and Universal Surety Company and The Goodyear Tire and Rubber Company are entitled to judgment as a matter of law.

Distribution of the fund interpleaded by plaintiff in this Court cannot be made until a determination of the issues here considered have been finally concluded.

The Court, therefore, directs that prevailing counsel will prepare, circulate and submit a form of judgment conforming to the Court's rulings herein announced. Such judgment shall include a certificate of the Court that such judgment when entered shall be and constitute a final judgment denying the cross claims asserted by Duane Post and Bruce Walters against plaintiff, Goodyear Tire and Rubber Company, and defendant, Universal Surety Company, and sustaining the motion for summary judgment of Goodyear Tire and Rubber Company and Universal Surety Company against said cross-claimants, and the Court determines that there is no just reason for delay in entering the final judgment. (Rules of Civil Procedure 54(b)).

It is by the Court so ordered.